UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYATTA AKILI MCCONICO,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

Criminal Case No. 15-20267
Civil Case No. 18-12747

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING MOVANT'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 [53] AND DENYING A CERTIFICATE OF APPEALABILITY**

Kenyatta Akili McConico petitions the Court to vacate his conviction pursuant to 28 U.S.C. § 2255. Mr. McConico's 2015 arrest was accomplished by use of Cell-Site Location Information ("CLSI"), which, prior to the Supreme Court's ruling in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), could be accessed by law enforcement even absent a showing of probable cause. Mr. McConico now asks for his conviction to be set aside in light of this ruling, arguing that his right to effective assistance of counsel was compromised by his attorneys' inability to suppress evidence stemming from his arrest.

**FACTUAL BACKGROUND**

On March 19, 2015, Mr. McConico sold heroin to a woman who later fatally overdosed on the drug. (Dkt. # 1). Law enforcement found his cell-phone number on her phone and used this number to track him down. On March 23, 2015, Michigan

State Trooper Jacob Liss obtained an order from the 17th District Court of Michigan authorizing T-Mobile to generate emails notifying him of the location of Mr. McConico's cell phone, pursuant to 18 U.S.C. §§ 3123-24, (Issuance of a Pen Register or Trap and Trace Device) and 18 U.S.C. § 2703(d) (Required Disclosure of Customer Communication or Records). (Dkt. 41, pg. 176; Gov't Ex. 1). The officers then received, for about twenty-four hours, emails updating them as to the location of the phone. (Id. at 177). They used this information to arrest Mr. McConico for an outstanding warrant on the intersection of Evergreen and Grand River Avenue. (Dkt. 26, pg. 5). After a quantity of heroin was seized from Mr. McConico's vehicle, he made several incriminating statements to the officers. (Id.).

**PROCEDURAL BACKGROUND**

On May 5, 2015, Mr. McConico was indicted federally for Distribution of Heroin Resulting in Death, in violation of 21 U.S.C. § 841. He was represented by five attorneys during the pendency of his case. On June 1, 2015, Attorney Andrew Wise of the Federal Defender Office made an appearance on Mr. McConico's behalf [8]. Mr. McConico pled not guilty and was released on bond [12]. On September 3, 2015, Attorney Benton Martin made an appearance for Mr. McConico [20]. He filed a Motion to Suppress Evidence on October 27, 2015 [26].

A hearing was held on the motion on February 3, 2016, with Mr. Wise representing the Defendant. The Court ruled that the exclusionary rule would not

apply in this case, because "the police conducted the search 'in objectively reasonable reliance on binding appellate precedent.'" Order Denying Defendant's Motion to Suppress, Dkt. # 31, citing *United States v. Fisher*, 745 F.3d 200, 203 (6th Cir. 2014). The Court alluded at the hearing to forthcoming Sixth Circuit review of the constitutionality of cell-phone tracking activity, but ultimately determined that it need not reach that issue.[1]

On March 9, 2016, the Federal Defender Office and Mr. Wise moved to withdraw as Mr. McConico's counsel, citing a breakdown in the attorney client relationship [34]. On March 21, 2016, following a hearing, the Court granted this motion [36]. The following day, attorney Jerome Sabbota made an appearance for Mr. McConico [38]. Mr. Sabbota moved to withdraw on May 16, 2016, citing a breakdown in the attorney client relationship [42]. A hearing was held, and on July 12, 2016, Mr. Sabbota's motion for withdrawal was granted.

Jeffrey Lee Edison took over as Mr. McConico's counsel on July 13, 2016 [44]. On April 24, 2017, Mr. McConico pled guilty to the distribution of heroin resulting in death, in violation of 21 U.S.C. § 841(a)(1). His negotiated oral Rule 11 plea agreement waived the 20-year mandatory minimum and called for a sentence

---

[1] On April 13, 2016, the Sixth Circuit ruled on *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016), and, on June 29, 2016, it denied rehearing *en banc*. That decision was reversed by the Supreme Court on June 22, 2018, in *Carpenter v. United States*, 585 U.S. ___ (2018).

between 10 and 12 years. On September 11, 2017, the Court sentenced him to 10 years in prison [52].

## LEGAL STANDARD

To succeed on a motion to vacate, set aside, or correct sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

## ANALYSIS

Mr. McConico alleges a violation of his constitutional right to the effective assistance of counsel. First, Mr. McConico argues that his counsel was deficient for not moving to suppress CSLI evidence pursuant to the Court's query on the silver platter doctrine, which Mr. McConico took as a hint. Second, Mr. McConico argues that counsel was deficient for failing to advise him that *Carpenter* was pending and could change the law on the warrantless use of CSLI.

To establish ineffective assistance of counsel, the movant must show that his counsel rendered deficient performance and thereby prejudiced the movant's defense so as to render the outcome of the proceedings unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first *Strickland* prong requires the movant to show that his counsel's representation "fell below an objective standard

of reasonableness." *Id.* at 687. The second prong requires showing of prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 698.

I. **The Silver Platter Doctrine**

The silver platter doctrine is a long-rejected loop-hole in the exclusionary rule which provided that "it is not a search by a federal official [and not subject to the exclusionary rule] if evidence secured by state authorities is turned over to the federal authorities on a silver platter." *Lustig v. United States*, 338 U.S. 74, 78-79 (1949) (plurality opinion). The doctrine was repudiated in 1960, and a motion based on the Supreme Court's repudiation of the silver platter doctrine would not have affected the outcome of the Court's evidentiary ruling. Indeed, the quotation of the Court cited by Mr. McConico is posed as a question to the Assistant United States Attorney on the Government's motivations for bringing the case federally, not its ability to do so.[2] The Supreme Court in *Elkins v. United States*, 364 U.S. 206, 224-25 (1960) dispensed with the silver platter doctrine by ruling that

---

[2] The colloquy is as follows:
    THE COURT: Why isn't this a state case? Are we getting close to silver platter kind of things, Mr. Chadwell?
    MR. CHADWELL: I am not sure what you mean by that.
    THE COURT: Silver platter is where the state does something in violation of the Fourth Amendment perhaps or even in violation of their

"evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial."

Had Mr. McConico's attorney raised the silver platter doctrine in a suppression motion, he would have merely been reiterating a holding that has been a backbone of fourth amendment jurisprudence for almost 60 years. The Court followed the holding in *Elkins* by deciding evidentiary issues based on federal, not state, law. *See infra* Part III. Indeed, the statutes authorizing the use of CSLI were federal statutes. Neither the silver plate doctrine, nor its repudiation, provides a ground to challenge the proficiency of Mr. McConico's counsel.

## II. The Effect of *Carpenter v. United States*, 138 S. Ct. 2206 (2018)

Mr. McConico argues that his guilty plea was not made voluntarily and knowingly because if he had known that the Supreme Court granted certiorari on the Sixth Circuit's decision in *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016) he would have requested the Court reconsider its ruling in light of forthcoming Supreme Court review. Such a request could not have changed the outcome of the

---

own laws so they can't use it in state court so they turn it over to the Federal Court?
MR. CHADWELL: That's not the case. The reason it's in Federal Court is because of the death. We took a series of cases where heroin caused death where we could prove the distribution, and this is one of those cases.
(Dkt. 41, pg. 5).

suppression hearing, however, because the Court expressly declined to consider the question answered in *Carpenter:* whether law enforcement's warrantless use of CSLI violated the Fourth Amendment.

The Court instead based its decision on the good faith exception to the exclusionary rule. It held that "the exclusionary rule does not apply because the police conducted the search in objectively reasonable reliance on binding appellate precedence." (Dkt. 31, pg. 1) (citing *United States v. Fisher*, 745 F.3d 200, 203 (6th Cir. 2014)). The good faith exception precludes Courts from suppressing otherwise admissible evidence where law enforcement conducted a search with a good faith desire to follow the law. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). The Supreme Court in *Davis* expanded the use of the good faith exception announced in *Herring v. United States*, 555 U.S. 135, 139-40 (2009) to encompass not just officers' "objectively reasonable reliance" on faulty warrants, but also their reliance on binding judicial precedence that would later be revised. *Id.*

The good faith exception would have applied even if the Supreme Court decided *Carpenter* before this Court decided the motion to suppress, as demonstrated by its ruling in that decision.

> "I think without deciding that even if there were some illegality in the method used in tracking which you are arguing, I think the officer relying on the Sixth Circuit case and the pen register and the totality of everything was acting in good faith. He thought he had the necessary warrants and so on. And therefore, even if you prevail on the illegality of the monitoring

for a day or less on mostly public streets, you lose on the good faith exception. And therefore I am denying the motion."

(Dkt. 33, pg. 17).

What mattered for purposes of the suppression ruling was not whether the officers' conduct was ultimately proven legal or illegal, but rather whether their conduct comported with what they had reason to believe the law was at the time they executed their search. *See, e.g., United States v. Williams*, 2008 WL 3659585 (Aug. 2, 2018) ("*Carpenter* does not govern the outcome in this case where the Government relied—in good faith—on then existing law to obtain [Defendant's] CSLI.").

## CONCLUSION

Mr. McConico has not proved that any of his counsel were ineffective because he has not demonstrated any course of action that they could have taken to suppress the evidence seized as a result of the CSLI search. The silver platter doctrine was not applicable to this case, and the Supreme Court's holding in *Carpenter* could not have been applied retroactively to exclude evidence that was lawfully obtained at the time of the search.

Accordingly,

**IT IS ORDERED** that Mr. McConico's Motion to Vacate his Sentence [53] under 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability because it is unlikely that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

**SO ORDERED**.

                                                s/Arthur J. Tarnow
                                                Arthur J. Tarnow
Dated: January 24, 2019           Senior United States District Judge