UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KENYATTA AKILI MCCONICO,

    Defendant.

                                      /

Case No. 15-20267

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING KENYATTA MCCONICO'S MOTION FOR EARLY RELEASE [79] AND REDUCING MCCONICO'S SENTENCE TO TIME SERVED**

Defendant, Kenyatta Akili McConico, is serving a ten-year sentence for Distribution of Heroin Resulting in Death in violation of 21 U.S.C. § 841(a)(1). (ECF No. 52). He is currently incarcerated at Elkton FCI. He is 41-years old and scheduled for release on May 30, 2026.

McConico has moved early release under 18 U.S.C. § 3582(c)(1). (ECF Nos. 71, 79). He argues that he is medically vulnerable and should be released from prison to protect himself from the pandemic. The motion has been fully briefed. A hearing was held on July 30, 2020, and the Court granted the motion on the record. For the reasons stated on the record and in this opinion, McConico's sentence will be reduced to time served.

## BACKGROUND

McConico was born in Detroit in 1978. He reported having an "okay" childhood and was raised by his mother and grandmother. (PSR ¶¶ 36-37). He dropped out of Cody High School in 1999. (PSR ¶ 47).

His first conviction was at the age of 21 in 2000, for selling cocaine. (PSR ¶ 26). He was convicted of driving without a license and possession of marijuana in 2003 (PSR ¶ 27), possession of marijuana in 2008 (PSR ¶ 28), sale of marijuana in 2011 (PSR ¶ 29), driving with a suspended license in 2011 (PSR ¶ 30), and use of methamphetamine in 2015 (PSR ¶ 31). Throughout this time, McConico also had several jobs in food service. (PSR ¶¶ 47-53).

McConico has two children, one age 17 and one age 9. He was not in a relationship at the time of his sentence.

McConico was indicted on May 5, 2015 for selling heroin that caused the death of another. (ECF No. 1). He had sold the heroin to Elizabeth Dixon that caused her death. Dixon had just left jail when she asked McConico for heroin, and, because her tolerance was lowered in jail, she tragically overdosed.

On April 24, 2017 McConico entered a guilty plea under a Rule 11 agreement that called for a sentence of between 10 and 12 years. On September 11, 2017, the Court sentenced him to 10 years in prison. (ECF No. 52).

## ANALYSIS

The Government argues that McConico has not exhausted his administrative remedies. Under Sixth Circuit precedent, a petitioner under § 3582(c)(1)(A) must exhaust his administrative remedies with the BOP. *United States v. Alam*, 960 F.3d 831, 832-34 (6th Cir. 2020).

Defendant's family submitted a request for early release to the Warden of Elkton FCI on April 20, 2020. They were informed by letter on April 27, 2020 that the request was denied. (ECF No. 79). The Government has since argued that McConico did not exhaust his remedies because he failed to appeal this denial. The Court rejected this argument at the July 30 hearing. First, it found that because McConico's notice of denial did not put him on notice of any administrative appellate rights, those rights were unavailable to McConico. Second, because the Government did not tell McConico about any avenues for appellate review, it forfeited the right to raise the appellate procedure as necessary to exhaustion at the merits stage of this petition. Further, if a final reason is needed that the BOP cannot throw up time-consuming appellate roadblocks to exhaustion, the Sixth Circuit has definitively held that "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d 831 at 834.

Because McConico's avenues for relief with the Bureau of Prisons have been exhausted, the Court has three questions to answer. The first is whether extraordinary and compelling reasons warrant a reduction in sentence. The second is whether McConico poses a danger to the community. The third is whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release McConico, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). There are extraordinary and compelling reasons for modification where "[t]he defendant is ... suffering from a serious physical or medical condition ... that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (quoting U.S.S.G. § 1B1.13 comment n.1(A)(ii))

The Sentencing Commission's Guidelines also contemplates release for "other reasons" that create extraordinary and compelling reasons for release in combination with a petitioner's medical reasons. The heightened susceptibility of prison populations to the virus creates an additional reason under the guidelines for

the release of medically vulnerable inmates. *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020) (citing U.S.S.G. § 1B1.13 comment n.1(D)).

Here, McConico has presented evidence that his medical conditions put him at greater risk of COVID-19 and that he is unable to social distance at Elkton FCI.

McConico suffers from Type II diabetes, hypertension, obesity, and high cholesterol. (ECF No. 78-1, PageId.350-357). Type II diabetes and obesity have both been recognized by the CDC as an underlying factor that contributes to increased risk. Centers for Disease Control: Coronavirus Disease 2019: People with Certain Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last accessed July 30, 2020. The Governments disputes neither that McConico suffers from these ailments nor that they are risk factors for COVID-19.

Further, the CDC recognizes hypertension as a factor that "might" put people at higher risk. *Id*. Courts in this district have found that there is sufficient scientific evidence of a comorbidity between hypertension and COVID-19 to justify release from custody for vulnerable inmates. *United States v. Sanders*, No. 19-cr-20288, ECF No. 35, PageId.202–03 (E.D. Mich. Apr. 17, 2020). Obesity, hypertension, and diabetes are sufficiently dangerous preexisting conditions to constitute extraordinary and compelling reasons to release younger men than McConico. *United States v.*

*Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (collecting cases).

McConico tested positive for COVID-19 on July 2, 2020. (ECF No. 78-1, PageId.352). He indicated at the hearing that he had suffered from COVID-19 as early as April, however. He testifies that Elkton FCI is mixing inmates who have tested positive with those who have tested negative. This is hardly surprising in a facility that has been hit by the pandemic as hard as Elkton.

Indeed, conditions at Elkton FCI have been among the worst in the country. 992 inmates have been tested positive and 9 have died. *See* Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ accessed on July 30, 2020; *see also Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *3 (N.D. Ohio Apr. 22, 2020), *enforcement granted*, No. 4:20-CV-00794, 2020 WL 2542131 (N.D. Ohio May 19, 2020), and *vacated*, 961 F.3d 829 (6th Cir. 2020) (describing conditions at Elkton FCI). Though Elkton FCI's response to the pandemic has improved since April, it has not remedied the inability of large numbers of prisoners with coronavirus to socially distance from each other. Absent a finding by a medical authority such as the CDC that COVID-19 confers lasting immunity, the Court declines to guess about the duration or strength of the immune response to the virus. *See United States v. Ireland*, No. 17-20203, 2020 WL 4050245, at *4 (E.D. Mich.

July 20, 2020) (noting that the CDC has advised that "[t]he immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood.").

Further, McConico is still suffering symptoms of the virus. District courts have held that recuperating from the virus at home is more effective than recuperating in prison. *See United States v. Parramore*, No. CR18-156-RSM, 2020 WL 3051300, at *5 (W.D. Wash. June 8, 2020); *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049, at *3 (S.D. Cal. May 15, 2020) ("Returning home to her family to quarantine is safer for the community than is keeping Ms. Arreola-Bretado confined at Otay Mesa where she will likely be a risk to other inmates and staff who have not yet contracted COVID-19."). McConico will be required to self-quarantine at home to address the risk that he could spread the virus. Home quarantine is both safer and more rigorous than quarantine in prison, where social distancing is structurally impossible.

2. Danger to the Community

The Sentencing Commission's Guidelines require that an individual granted early release under 18 U.S.C. § 3582 "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13. The Court found on the record at the July 30, 2020 hearing that McConico was no longer a danger to others. His thoughtful answers to the Court's questions, his attitude, and

his actions during incarceration and on pretrial release, all demonstrate that he has the capacity and will to end his historical dependence on the drug trade.

3. ! <u>Section 3553(a) Factors</u>

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the July 13, 2020 hearing.

McConico has accepted responsibility for the death of Ms. Dixon. Selling heroin is inherently destructive to the lives of others, as McConico has come to understand. The fact that McConico warned Ms. Dixon to be careful with the heroin

because her tolerance was low demonstrated that he cared at least somewhat about her well-being. The fact that he sold her the heroin anyway, fully knowing the risks of overdose for someone with a diminished tolerance, demonstrated that he didn't care enough.

Recognizing the seriousness of McConico's offense, the Court finds that he has sufficiently changed his life and outlook on life in prison to be entitled to a sentence of time served. While incarcerated, McConico has taken classes in drug education, legal research, GED preparation and food service. (ECF No. 79-5, PageId.425). Neither of his two infractions while in BOP custody were serious, and BOP has designated him as a low-risk for recidivism. He has maintained steady employment as a kitchen maintenance worker and then as a unit orderly.

McConico has a strong reentry plan, which diminishes the Court's concerns as to his recidivism. McConico plans to live with his brother, Islam McConico-Ullah, in Detroit. He intends to work as a Maintenance Tech 1 at AZA Management, a property management company focusing on home repair.

As for the need for the sentence to promote respect for the law and to afford deterrence, a reduction in McConico's sentence will not diminish the general deterrent value of McConico's original ten-year sentence. Individuals contemplating criminal behavior could hardly be expected to rely on an unforeseen event on par with a pandemic to reduce the prison sentences they would risk by their actions. Nor

does a reduced sentence threaten to diminish respect for the law. Respect for the law is promoted by demonstrating its humanity as much as its rigidity.

## CONCLUSION

McConico posed a grave danger to the community when he was involved in the heroin trade. The death of Elizabeth Dixon highlighted this danger. Nevertheless, the Court is persuaded that McConico has left heroin behind. His conduct in prison and on pretrial release his demonstrated the extent of his reformation.

The pandemic has put unparalleled stress on the Bureau of Prisons and provided extraordinary and compelling reasons to release individuals, such as McConico, who are at risk of severe adverse health results, and who have demonstrated that they no longer pose a danger to the community.

Accordingly, for the reasons articulated in this order and on the record at the July 30, 2020 hearing,

**IT IS ORDERED** that McConico's Motion for Early Release [79] is **GRANTED**. His sentence is reduced to time-served.

**IT IS FURTHER ORDERED** that McConico be **IMMEDIATELY RELEASED** from custody.

**IT IS FURTHER ORDERED** that upon his release from custody, McConico will begin his 3-year term of **SUPERVISED RELEASE**, as outlined by the September 12, 2017 Judgment (ECF No. 52). The Court has already emphasized that

McConico must participate in mental health and substance abuse treatment as outlined in the Special Conditions of Supervision. McConico's Conditions of Supervised Release are **MODIFIED** only to provide that he shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.

**IT IS FURTHER ORDERED** that upon his release from custody, McConico shall remain in strict home confinement and quarantine himself from family members for at least 14-days from the time of his release or the time he ceases to show symptoms of COVID-19, whichever occurs later.

**SO ORDERED**.

Dated: July 31, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge